UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

               v.

ROBERT MENENDEZ

 and

SALOMON MELGEN,

               Defendants.

Crim. No. 2:15-cr-00155
Hon. William H. Walls

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO TRANSFER VENUE**

Pursuant to Federal Rule of Criminal Procedure 21(b), Defendants Senator Robert Menendez and Dr. Salomon Melgen ("Defendants"), through undersigned counsel, respectfully move this Honorable Court for an Order transferring this proceeding to federal district court in the District of Columbia. In support of this motion, Defendants state as follows:

**INTRODUCTION**

Given the broad reach of jurisdiction under the federal statutes involved in this criminal case, the charges here could have been brought in as many as five different states – New Jersey, New York, the District of Columbia, Virginia, and Florida. In fact, the prosecutors here began their investigation and presentation of witnesses to a grand jury in the Southern District of Florida. For whatever reasons, however, the prosecutors decided to transfer their investigation to a grand jury in New Jersey and then to file an indictment in this District – despite the fact that

virtually none of the acts really at issue in the case occurred in New Jersey and virtually none of the relevant, material witnesses reside in New Jersey.

Reduced to their essence, the charges in this case allege that in exchange for things of value he received from Dr. Melgen (largely in Florida and the Dominican Republic), Senator Menendez took actions and caused his staff to take actions in Washington, D.C. to assist Dr. Melgen's interests in Florida and the Dominican Republic. The indictment also alleges that Senator Menendez filed a false financial disclosure form in Washington, D.C. Notably absent from the government's 68-page indictment is any substantive "official act" taken by Senator Menendez in New Jersey. Indeed, the purported basis for jurisdiction on the honest services fraud charges appears to be radio communications from the pilot of a plane in New Jersey air space on which Senator Menendez was a passenger. *See* Indictment ¶ 264. Needless to say, the pilot's cabin and the airport control tower were not the "nerve center" of the conspiracy alleged in the indictment.

Under Federal Rule of Criminal Procedure 21(b), this Court has the authority to transfer proceedings to the District of Columbia "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). To determine whether transfer is appropriate under Rule 21(b), the courts consider a variety of factors, including the location of the defendants, the location of possible witnesses, the location of the events at issue, and the location of counsel. *See In re United States*, 273 F.3d 380, 387-88 (3d Cir. 2001) (listing ten factors to be considered under Rule 21(b)); *United States v. Negron*, No. 08-CR-501, 2008 WL 5272056, at *2 (D.N.J. Dec. 6, 2008) (Walls, J.) (same).

In this case, almost all of the conduct at issue took place in the District of Columbia, and the vast majority of potential witnesses – many of whom continue to serve in the legislative and

executive branches – work or reside there. Moreover, the entire prosecution team is based in Washington, D.C. (literally blocks from the federal courthouse), Senator Menendez's attorneys are based in D.C., and the Senator himself – while still a New Jersey resident – spends the majority of the work week in Washington to fulfill his duties and responsibilities as a United States Senator. For these reasons, as well as several others described below, the Court should transfer this case to the District of Columbia.

## ARGUMENT

**I.   TO DETERMINE WHETHER TRANSFER IS APPROPRIATE UNDER RULE 21 (b), COURTS APPLY THE *PLATT* FACTORS.**

The transfer of criminal proceedings for trial is governed by Rule 21 of the Federal Rules of Criminal Procedure. Rule 21(b) permits the Court, "[u]pon the defendant's motion," to transfer the proceedings to another district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). The fact that the government decided to bring charges in a particular district does *not* create any presumption that the case should be tried in that district. *Negron*, 2008 WL 5272056, at *2; *see also United States v. Coffee*, 113 F. Supp. 2d 751, 753 (E.D. Pa. 2000); 2 Charles Alan Wright & Peter J. Henning, *Federal Practice & Procedure* § 345 at 446-47 (4th ed. 2009). Rather, "[b]ecause convenience is the goal a court must look at all the circumstances" to decide whether transfer is warranted under Rule 21(b). *Negron*, 2008 WL 5272056 at *2.

To determine whether transfer is warranted, this Court has applied the factors identified by the Supreme Court in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964). Under the so-called "*Platt* factors," the Court considers whether transfer is appropriate based on (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of documents and records likely to be involved; (5) any

disruption of the defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket conditions of each district or division involved; and (10) any other special elements which might affect the transfer. *Platt*, 376 U.S. at 243-44; *see also In re United States*, 273 F.3d at 387-88; *Negron*, 2008 WL 5272056 at *2.[1]

"While the burden is on the defendant to show that transfer would serve the purpose specified in the Rule, 'nothing in Rule 21(b) or in the cases interpreting it place on the defendant seeking a change of venue the burden of establishing truly compelling circumstances for such a change. It is enough if, all relevant things considered, the case would be better off transferred to another district.'" *Coffee*, 113 F. Supp. 2d at 753 (quoting *Matter of Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)) (internal citation omitted); *see also In re United States*, 273 F.3d at 388; *Negron*, 2008 WL 5272056 at *1. Given the number of factors that weigh in favor of transfer here, this case actually has compelling circumstances and would be "better off" transferred to the District of Columbia.

II. **THE *PLATT* FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFERRING THIS CASE TO WASHINGTON, D.C.**

Of the ten *Platt* factors listed above, seven of the most important (the location of the defendants, the location of possible witnesses, the location of the events at issue, disruption to defendants' businesses, expense to the parties, the location of counsel, and other special elements) weigh in favor of transferring this case to the District of Columbia. The other three

---

[1] "'Ordinarily, the various factors appear in combination, with some pointing in favor of transfer and others against transfer. It is incumbent on the court in such a case to strike a balance and decide which factors seem to be of greatest importance in that case.'" *Negron*, 2008 WL 5272056 at *2 (quoting *Coffee*, 113 F. Supp. 2d at 754). In this case, however, there is very little to balance, as all of the factors either weigh in favor of transfer to Washington, D.C. or are neutral as to venue.

less significant factors (the location of documents /records, relative accessibility of the place of trial, and docket conditions in the two districts) are neutral, and do not provide any particular reason to try this case in New Jersey.  Each of the *Platt* factors is addressed in turn below.

### A. Location of the Defendants

The "location" of the defendants favors transfer to Washington, D.C.  This case involves two different defendants who are from two different states.  Each might want to be tried in their community, but that is not possible.  The rules look to a different criterion to determine this issue, and that is the location of the defendants.  While it is true that Senator Menendez is a New Jersey resident, his "location" is primarily in Washington, D.C.  His duties and responsibilities as a United States Senator require him to spend the majority of the work week in Washington, D.C.  Senator Menendez has an apartment and a Senate office in Washington, D.C., and works at his full-time job there.  Dr. Melgen is not a resident of either New Jersey or Washington, D.C., but his home in Florida is closer to Washington, D.C. than New Jersey and he has traveled to Washington, D.C. occasionally for business and political events.  Dr. Melgen has thus joined in this motion to transfer venue to Washington, D.C., as he has no connection to New Jersey.[2]

### B. Location of Possible Witnesses

The location of possible witnesses is one of the most significant factors for a court to consider in a Rule 21(b) motion.  *See United States v. Daewoo Indus. Co.,* 591 F. Supp. 157, 160 (D. Or. 1984).  This factor "should relate not only to the calling of witnesses, but to the process of interviewing and determining which witnesses should be called." *United States v. Clark*, 360 F. Supp. 936, 943 (S.D.N.Y. 1973).   In this case, the location of possible witnesses overwhelmingly favors transfer to Washington, D.C.

---

[2] Currently, Dr. Melgen is incarcerated in Southern Florida.  If that situation continued through trial, he would have to be transported to either location.

Based on the discovery provided to date, the prosecutors put 36 witnesses before the grand juries that heard this case. Of those 36 witnesses, only 6 were from New Jersey (11 were from Washington, D.C., and the rest were from other states or countries). As part of its investigation, the government also conducted interviews with 172 potential witnesses. Of the 172 people interviewed, only 16 were from New Jersey (59 were from Washington, D.C. and the rest were from other states or countries). The government therefore cannot claim that it selected New Jersey because it is the most convenient venue for potential witnesses. To the contrary, roughly 90% of the witnesses involved in the government's investigation are from somewhere other than New Jersey (with the largest percentage of these "investigative" witnesses being from Washington, D.C.).

Focusing on the most likely witnesses at trial, their location skews even more heavily in favor of Washington, D.C. Defendants anticipate that the vast majority – approximately two-thirds – of the witnesses[3] likely to be called by both the government and the defense at trial work or reside in Washington, D.C., not New Jersey (where less than ten percent reside). With respect to the government's allegations regarding multi-dosing and Medicare reimbursement policy, for example, almost all (87%) of the witnesses likely to be called by either the government or the defense work or reside in Washington, D.C., and *none* of these witnesses work or reside in New Jersey. These witnesses include staff members of Senator Menendez, other Members of Congress and their staffs, a cabinet secretary from HHS, and sub-cabinet

---

[3] Defendants do not refer to any witness as either a "government witness" or a "defense witness" because, in a criminal trial, the witnesses do not "belong" to either party. To the contrary, defendants anticipate that much of the testimony that they will rely upon as part of the defense will be elicited from government employees called as witnesses by the government.

officials at CMS. A list of the witnesses likely to provide testimony on the multi-dosing issue and the Office of Senator Menendez's interactions with CMS is attached as Exhibit 1.[4]

Similarly, with respect to the port security/cargo screening issue, again almost all (72%) of the witnesses likely to be called by either the government or the defense work or reside in Washington, D.C., and only *one* of the witnesses works or resides in New Jersey. *See* Exhibit 2. These witnesses include staff members of Senator Menendez, government officials at the Department of Homeland Security, and employees of the Department of State. Most of the remaining witnesses on the port security issue work or reside overseas, and therefore would be inconvenienced regardless of whether the trial is held in Washington, D.C. or New Jersey.

The same is also true of possible witnesses likely to be called by either the government or the defense regarding (1) visa applications or immigration issues, (2) Senator Menendez's financial disclosure forms, and (3) gifts allegedly given by Dr. Melgen to Senator Menendez. With respect to visas, the vast majority of potential witnesses (90%) are employees of the State Department, staff members in Senator Menendez's Washington Office, or live in neither D.C. nor New Jersey. Only *one* of these witnesses works or resides in New Jersey. *See* Exhibit 3. Similarly, Senator Menendez's financial disclosure forms were prepared and filed in Washington, D.C., and all of the staff members who were likely involved in their preparation and filing (and, therefore, all of the likely witnesses) also work or reside in Washington, D.C. *See* Exhibit 4. Finally, many of the witnesses likely to testify regarding alleged gifts (plane flights, hospitality, campaign contributions, etc.) work or reside in Washington, D.C., or are residents of

---

[4] Defendants are filing these lists of potential witnesses under seal, as actual witness lists have not yet been filed in this case. In addition, some of the potential witness names are gleaned from grand jury materials that are subject to Federal Rule of Criminal Procedure 6(e) and the Court's protective order.

neither Washington, D.C. nor New Jersey.[5]  *See* Exhibit 5.  The only real substantive witness from New Jersey who is likely to testify about campaign contributions ("Person B") is also a frequent visitor to Washington, D.C., so D.C. would not be an inconvenient location for him.

In sum, both in terms of sheer number and the significance of their testimony, the location of possible witnesses in this case weighs heavily in favor of transfer.  Witnesses obviously will be subject to compulsion under subpoena, and will show up wherever the trial occurs.  (This is why Rule 21(b) and the cases interpreting its provisions speak of the "convenience" of potential witnesses, not their "willingness" to testify.)  But, again, the vast majority of likely witnesses in this case work or reside in Washington, D.C., whereas only a handful work or reside in New Jersey.  The location of possible witnesses thus strongly favors transfer.  *See Coffee*, 113 F. Supp. 2d at 755; *United States v. Alter*, 81 F.R.D. 524, 527 (S.D.N.Y. 1979) ("Thus it appears that the majority of witnesses for both government and defendants reside in [the transferee district] or outside of this district and that the factor of convenience of witnesses strongly tilts in favor of a transfer."); *Clark*, 360 F. Supp. at 943 (granting a motion to transfer where 35 of the 52 potential witnesses identified by defendants were located in the transferee district).

### C. Location of the Events at Issue

Like the location of possible witnesses, the location of the events at issue also weighs heavily in favor of transfer.  Where the "center of gravity" or "nerve center" of a case lies somewhere other than the district in which charges have been brought, the courts have held that this factor "generally carries considerable weight."  *United States v. Martino*, No. S1-00-CR-389, 2000 WL 1843233, at *7 (S.D.N.Y. Dec. 14, 2000); *see also Alter*, 81 F.R.D. at 525 ("A

---

[5] In addition, some of the "gift" witnesses from New Jersey are family members and staff of Senator Menendez who would be equally available in Washington, D.C.

significant factor is the location of the events likely to be at issue."); *Clark*, 360 F. Supp. at 945 (transferring a criminal case to the "center of gravity" of the alleged criminal conspiracy).  In this case, even a cursory review of the indictment itself makes plain that the vast majority of the events at issue took place in Washington, D.C., not New Jersey.

In 157 numbered paragraphs, the indictment lists a series of "official acts" allegedly taken by Senator Menendez at Dr. Melgen's request in return for alleged "gifts."  Almost all of these "official acts" took place in Washington, D.C., and almost none took place in New Jersey.

With respect to the multi-dosing and Medicare reimbursement policy, for example, the indictment alleges that Senator Menendez instructed staff members in his Washington office to contact representatives of Dr. Melgen as well as officials at CMS regarding the multi-dosing issue, *see* ¶¶ 148-155, 157-165, 173-175, 177, 180-184, 207-208; that Senator Menendez spoke with the Director and Acting Principal Deputy of CMS regarding the issue, *see* ¶¶ 166-169; that Senator Menendez arranged a meeting with the Senate Health, Education, Labor, and Pensions Committee for Dr. Melgen, *see* ¶¶ 185-188; that Senator Menendez asked the Senate Majority Leader for assistance on the multi-dosing issue for Dr. Melgen, *see* ¶¶ 193-196; that Senator Menendez met with CMS Acting Administrator Marilyn Tavenner to discuss this issue, *see* ¶¶ 198-204; and that Senator Menendez also met with HHS Secretary Kathleen Sebelius in Washington, D.C., to discuss this issue, *see* ¶¶ 209-220.  All of these alleged "official acts" took place in Washington, D.C.  None of them took place in New Jersey.

Similarly, with respect to the port security/cargo screening issue, the indictment alleges that Senator Menendez met with the Assistant Secretary of State for the Bureau of International Narcotics and Law Enforcement Affairs ("INL") to assist Dr. Melgen in his contract dispute, *see* ¶¶ 117-131; and that Senator Menendez instructed his staff to contact Customs and Border Patrol

regarding the potential donation of cargo screening equipment to the government of the Dominican Republic, *see* ¶¶ 132-142.  Again, all of these events took place in Washington, D.C.  None of these events took place in New Jersey.

With respect to visa applications and immigration issues, the indictment alleges that staff members in Senator Menendez's Washington office contacted officials at the State Department and representatives of Dr. Melgen regarding the visa applications of certain friends of Dr. Melgen, *see* ¶¶ 74-77, 88-89, 95-98, 100-104, 110; that the Chief of the Nonimmigrant Visa Unit at the State Department sent Senator Menendez a letter explaining the denial of certain visa applications, *see* ¶ 99; and that Senator Menendez's office prepared a letter to the Consul General in support of a visa applicant, *see* ¶¶ 111-113.  Again, almost all of these events took place in Washington, D.C.  Only one person from New Jersey ("Staffer 7") was involved in any of this conduct, and this staff member can easily travel to Washington, D.C. and work from the Senator's D.C. office if called to testify at trial.

The same is also true of Senator Menendez's alleged failure to disclose certain "gifts" or "things of value" on his financial disclosure forms.[6]  The indictment alleges that Senator Menendez filed financial disclosure reports in which he certified that he had not received any reportable gifts during the relevant calendar year.  *See* ¶¶ 64-69.  These disclosure reports were distributed, prepared, signed, and filed by the Senator and his staff in Washington, D.C.  None of this conduct took place in New Jersey.

---

[6] Indeed, with respect to the disclosure forms/false statements charges (Count 22), it is far from clear that the New Jersey court properly has jurisdiction.  The financial disclosure forms at issue were distributed to the Senator in Washington, D.C., were prepared in Washington, D.C., were completed and signed in Washington, D.C., and were filed with the government in Washington, D.C.  The prosecutors have yet to indicate why jurisdiction over this charge properly lies in New Jersey.  Senator Menendez accordingly reserves his right to move to dismiss Count 22 at the time set forth in the Court's scheduling order were the case to remain in New Jersey.

With respect to the "gifts" themselves, the only alleged New Jersey "connection" is that certain campaign contributions ended up with New Jersey political committees, that a fundraiser was held in New Jersey, and that certain flights landed in or took off from New Jersey. But the indictment makes clear that the actual alleged solicitation of the campaign contributions took place in Washington, D.C., *see* ¶¶ 47-53, that these contributions were allegedly made in return for "official acts" performed in Washington, D.C. (and were thus part of an alleged conspiracy whose "nerve center" or "center of gravity" was Washington, D.C.), *see* Section C above, and that the alleged purpose of the various flights was to transport Senator Menendez to the Dominican Republic (often via stops or connections outside of New Jersey, some of which were also in Washington, D.C.), *see* ¶¶ 25, 36. The core "gifts" were plane flights and hospitality allegedly provided by Dr. Melgen in Florida, the Dominican Republic, and Paris – not New Jersey. None of the alleged "gifts" in these categories were for a New Jersey hotel, vacation, meal, or entertainment.

In short, on its face the indictment makes clear that the vast majority of the events at issue took place in Washington, D.C., not New Jersey. In similar circumstances, courts have not hesitated to transfer proceedings to the "nerve center" or "center of gravity" of the conduct at issue. *See United States v. Ringer*, 651 F. Supp. 636, 638 (N.D. Ill. 1986) (granting motion to transfer where "[e]ven a cursory glance at the indictment" demonstrated that "almost every fact alleged either took place in [the transferee district] or was directed from there by defendants"); *Alter*, 81 F.R.D. at 526 (granting motion to transfer where "[i]t is beyond dispute that most, if not all, of the acts and conduct in furtherance of the alleged scheme … occurred in [the transferee district] and that it was the 'nerve center' of the alleged illicit operations"); *Negron*, 2008 WL 5272056 at *4 (granting motion to transfer where the alleged conspiracy was conceived and

agreed upon outside of New Jersey and defendant's only connection to New Jersey was via a phone call placed by a co-conspirator); *Clark*, 360 F. Supp. at 941-43 (granting motion to transfer case from New York to Oklahoma where the "center of gravity [was] clearly in Oklahoma," there was "no indication that any of the important events took place in or near New York," and "the great majority of the events and transactions which will be in question in the trial of this case … occurred in Oklahoma or other Middle Western locations"). The location of the events at issue in this case thus weighs heavily in favor of transfer.

### D.  Location of Documents and Records at Issue

In today's world of electronic media, the location of relevant documents and records is a neutral factor. *See United States v. Posner*, 549 F. Supp. 475, 478 (S.D.N.Y. 1982) ("The location of documents and records is not a major concern in these days of easy and rapid transportation."). Any documents or records could just as easily be produced and presented in Washington, D.C. as New Jersey.

Moreover, even if the government has already moved any documents to New Jersey (which seems unlikely), many of those documents appear to have originated in government offices (including Senator Menendez's office) in Washington, D.C. The government would not be able to rely on its own decision to relocate documents from Washington, D.C. to New Jersey as a factor weighing against transfer. *See Coffee*, 113 F. Supp. 2d at 756. The location of documents and records is thus a neutral factor.

### E.  Disruption to the Defendants' Businesses

The potential disruption to defendants' businesses weighs heavily in favor of transfer to Washington, D.C.

Senator Menendez continues to serve in the United States Senate. While proceedings in this case may preclude him from being present in his Senate office on some days leading up to and during trial in either location, a trial in Washington, D.C. would allow the Senator to continue to fulfill his responsibilities in Washington in the mornings and evenings, and during any breaks in the proceedings. The Capitol and his Senate office are no more than a five minute walk from the courthouse in Washington, D.C. A trial in New Jersey obviously would not afford him the same ability to continue to participate in Senate business. Depending on the matters pending before the Senate during any trial, Senator Menendez's ability to participate in Senate business would be possible in Washington, D.C. and not in New Jersey. And the part of the Senator's job that now occurs on weekends in New Jersey could continue to occur once trial recesses each week.

Moreover, many of the witnesses in the case will likely be members of the Senator's Washington staff. If several members of the Senator's Washington Office were required to travel to New Jersey to testify at trial, the disruption to the Senator's Washington Office would be severe – particularly if the Senate was in session at the time and Senator Menendez himself was also in New Jersey for trial. Transferring this case to Washington, D.C. would minimize this disruption by allowing these potential witnesses to continue working in the Senator's Office until they were needed at the courthouse nearby.

With respect to Dr. Melgen, his medical practice has been suspended (and he remains incarcerated). A trial in either New Jersey or Washington, D.C. will not have any further impact on his business.

### F. Expense to the Parties

The expense to the parties also weighs heavily in favor of transfer to Washington, D.C. As explained above, the vast majority of witnesses likely to be called by either the government or the defense work or reside in Washington, D.C. If the trial is held in New Jersey, both the government and the defendants will incur costs for the transportation, food, and lodging of these witnesses – costs that would largely be avoided if the trial were held in Washington, D.C.

Moreover, as explained below, counsel for the government and for Senator Menendez are all based in Washington, D.C.[7] If the trial is held in New Jersey, the government and defendants will also incur substantial costs for the transportation, food, and lodging of attorneys and support staff for the duration of trial. Again, these costs would largely be avoided if the trial were held in Washington, D.C.

### G. Location of Counsel

The location of counsel also weighs heavily in favor of transfer. The entire prosecution team is from the Department of Justice's Public Integrity Section ("PIN") in Washington, D.C. PIN's offices are literally within walking distance of the federal courthouse in Washington, D.C. All of Senator Menendez's counsel work or reside in Washington, D.C. Dr. Melgen's attorneys are from Florida, and would have to travel for a trial in either district.

### H. Relative Accessibility of the Place of Trial

The relative accessibility of Newark and Washington, D.C. is a neutral factor. Both courthouses are easily accessible to all parties and witnesses. To the extent that most of the potential witnesses work or reside in Washington, D.C., however, this factor weights in favor of

---

[7] With respect to Dr. Melgen, his attorneys and several of his witnesses are from Florida. Dr. Melgen will therefore incur costs whether the trial is held in either New Jersey or Washington, D.C.

transfer (particularly as to the many witnesses who are legislative and executive branch employees, whose offices are literally within walking distance of the courthouse in D.C.).

### I. Docket Conditions of Each Docket

Due to the Speedy Trial Act and the priority given to complex criminal cases such as this one, this factor is neutral. *Ringer*, 651 F. Supp. at 640; *United States v. Benjamin*, 623 F. Supp. 1204, 1215 (D.D.C. 1985). Courts in either district can accommodate the voluminous discovery and motions practice involved in this case. Moreover, to the extent that docket conditions differ between districts, both defendants have indicated a willingness to waive any requests for a speedy trial in this case so that the motions and other proceedings can be properly considered.

### J. Other Special Elements

In addition to the factors addressed above, there are other considerations that also weigh in favor of transferring this case to the District of Columbia.

First, the judicial branch should transfer this case to Washington, D.C. to prevent any unnecessary interference in the operation of the legislative and executive branches. The indictment details the activities of at least three other U.S. Senators (in addition to Senator Menendez), all of whom will likely be called as witnesses at trial. The indictment also alleges conduct and interactions with several dozen legislative and executive branch officials (including congressional staff members, cabinet secretaries, and high-ranking officials at the State Department, HHS, and CMS), many of whom will also likely be called as witnesses at trial. *See* Exhibits 1-5. Requiring at least two other sitting Senators as well as over a dozen executive and legislative staff members to travel to New Jersey for trial threatens to disrupt the operation of the executive and legislative branches, at a time when the Congress and these agencies have important work before them. A trial in Washington, D.C. would minimize these disruptions and

ensure that any trial does not unnecessarily interfere with the proper operation of the coordinate branches of government.[8]

Second, while not dispositive, pervasive pre-trial publicity in New Jersey is another factor weighing in favor of transfer to Washington, D.C. As a result of leaks by "law enforcement officials" during this investigation (including several prejudicial leaks in the weeks and days leading up to the grand jury's decision), this case had already received extensive publicity in New Jersey before it was filed. The initial court date was covered by over 100 reporters and photographers. Every court proceeding, let alone every day of trial, will result in more of the same. No matter what additional steps are taken in any selection process, it is just obvious that it will be easier to seat a jury without strong views in support of or against Senator Menendez outside the state.[9]

## CONCLUSION

There are very few reported cases in which more of the *Platt* factors – particularly those factors typically afforded the greatest weight – favor transfer to another district. In this case,

---

[8] A transfer to Washington, D.C. allows this Court then to give maximum attention to the separation of powers by avoiding any interference with co-equal branches of government. *See, e.g.*, *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990) (explaining the judiciary should avoid "inappropriate interference in the business of the other branches of Government"); *Davis v. Passman*, 442 U.S. 228, 253 n.2 (1982) (Powell, J., dissenting) ("Concerns of comity similar to those that govern our dealings with the States also come into play when we are asked to interfere with the functioning of Congress.").

[9] Another special factor is the way in which the government has chosen to frame the indictment. Among other things, the government has charged defendants with honest services fraud, in which they allegedly "devised and intended to devise a scheme and artifice to defraud and deprive the United States and *the citizens of New Jersey* of their right to the honest services of Robert Menendez, a United States Senator, through bribery." Indictment ¶ 263 (emphasis added). Given the way the prosecutors wrote the indictment, a transfer to Washington, D.C. would help avoid the prejudice that could be caused by calling the potential jurors the "victims" of the alleged crime.

almost all of the events at issue took place in Washington, D.C., the vast majority of likely witnesses work or reside in Washington, D.C., and counsel for both the government and one of the defendants are all based in Washington, D.C.  In similar circumstances, the courts have not hesitated to transfer a case to the district in which the true "nerve center" or "center of gravity" was located.  *See, e.g.*, *Negron*, 2008 WL 5272056 at *2-*5; *United States v. Forbes*, No. 01-CR-140 (D.N.J. March 18, 2002) (Walls, J.); *Coffee*, 113 F. Supp. 2d at 754-59; *Ringer*, 651 F. Supp. at 638; *Clark*, 360 F. Supp. at 940-46.  Accordingly, Senator Menendez and Dr. Melgen move this Court for an order transferring all remaining proceedings to the District of Columbia pursuant to Federal Rule of Criminal Procedure 21(b).

DATED:  May 11, 2015							Respectfully submitted,

| | |
|---|---|
| /s/ Maria Dominguez | /s/ Abbe David Lowell |
| Maria Dominguez | Abbe David Lowell |
| 801 Brickell Avenue | Jenny Kramer |
| Suite 900 | CHADBOURNE & PARKE LLP |
| Miami, FL  33131 | 1200 New Hampshire Avenue NW |
| 305-934-5209 | Washington, DC  20001 |
| maria.dominguez@thedominguezlawoffice.com | (202) 974-5605 |
| | adlowell@chadbourne.com |
| | |
| *Counsel for Dr. Salomon Melgen* | *Counsel for Senator Robert Menendez* |