UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 2:15-cr-155** |
| **v.** | ) | **Hon. William H. Walls** |
| | ) | |
| **ROBERT MENENDEZ and** | ) | |
| **SALOMON MELGEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**UNITED STATES' MOTION TO PRECLUDE
IMPROPER ARGUMENTS AND IMPOSE SAFEGUARDS
TO PROTECT THE JURY FROM UNDUE EXTRAJUDICIAL PRESSURE**

The defendants are charged with bribery.  As in any criminal case, the jury's verdict should be based solely on a faithful application of the law to the admitted evidence.  And as in any bribery case, a jury's verdict should be based on whether things of value were offered or accepted to influence, at least in part, official actions.  Throughout the first trial, however, the defendants invited the jury to nullify the law by making comments and arguments designed to politicize and racialize this case.  The jury was also exposed to extrajudicial conduct that risked improperly influencing their examination of the evidence.  The Court should preclude improper arguments and comments and impose safeguards that will prevent the jury from being exposed to undue extrajudicial pressure.

**I.      The Defendants Should be Precluded from Making Improper Arguments and Comments that Politicize and Racialize this Case.**

Arguments about a defendant's political affiliation or ethnicity have no place in a criminal trial.  *See United States v. Blankenship*, 382 F.3d 1110, 1126-27 (11th Cir. 2004) (expressing "shock and disgust" at defense counsel's attempt to "inflame the jury by unnecessarily injecting race" into the trial with a reference to the racial history of the defendant's hometown); *United*

*States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (including claims by defendants that they are the victims of political persecution in a list of "matters far beyond the scope of legitimate issues in a criminal trial"); *United States v. Andreas*, 23 F. Supp. 2d 835, 853 (N.D. Ill. 1998), aff'd, 216 F.3d 645 (7th Cir. 2000) ("[*P*]*er se* remarks regarding [race and national origin] serve no relevant purpose in this or any other criminal trial.") (granting the government's motion in limine to preclude argument based on race or national origin); *cf. Buck v. Davis*, 137 S. Ct. 759, 779 (2017) ("The statement that 'it is inappropriate to allow race to be considered as a factor in our criminal justice system' is equally applicable whether the prosecution or ineffective defense counsel initially injected race into the proceeding.").

Nevertheless, during the first trial, counsel for both defendants used their opening and closing arguments to repeatedly invite the jury to consider the defendants' ethnicity and political affiliation in resolving the charges against them. They made baseless accusations of racial animus on the part of the Government. *See, e.g.*, Sept. 7, 2017, Tr. at 15 (defense opening) ("The government wants you to believe that this entire friendship was a sham. That these men were using each other to get things. *That just because of their heritage*, that they are somehow corrupt." (emphasis added).); *id.* at 27 (defense opening) ("Sal and Bob were part of a fellowship of Hispanic Americans, entrepreneurs, businessmen, doctors, lawyers, politicians. . . . Their idea was to pay it forward, help young Hispanic Americans improve their lives. Lift up their cultural community. Play a larger role in American society. That's what Dr. Melgen was about. *And this case is not only an attack on these two men, it's an attack on that whole group*." (emphasis added)). They gratuitously reminded the jury of the defendants' ethnicity. *See, e.g.*, Sept 6, 2017, Tr. at 133 (defense opening) ("There are 15 percent of the United States who are from Hispanic backgrounds. And he will sometimes have only been the only Hispanic Senator."); Nov. 6, 2017, Tr. at 41

(defense closing) ("And you have heard that at various times he was one of only one or two Hispanic Senators addressing that population."). And they improperly injected partisan politics under the guise of a civics lesson. *See* Sept. 6, 2017, Tr. at 169 (defense opening) ("Now, I want to do a couple of things for you to talk about your role as jurors and this is important. When these prosecutors come into the courtroom, they oftentimes say I am here on behalf of the United States or for the United States and they are from the executive branch of government. *Their boss is the Attorney General of the United States and the president*." (emphasis added)).

But this case is not about race and it is not a referendum on the current Administration, nor the last. The defendants' racially and politically charged comments have no place in the courtroom and serve only to confuse the issues and invite the jury to nullify the law by reaching a verdict in violation of its oath. *See United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[A] juror . . . who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role."); *cf. United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself."). This Court should actively safeguard the integrity of its proceedings by precluding such improper comments.

## II. The Court Should Impose Safeguards to Protect the Jury from Undue Extrajudicial Pressure.

Each morning during trial, the jury had to walk down a long public hallway from the elevator to the jury room. Defendant Menendez, his family, his attorneys, his employees, and his supporters lined the hallway each morning until the last juror had passed. The jury thus had to walk a gauntlet of the defense team each morning before court. Defendant Menendez also periodically held prayer circles with dressed clergy and sung religious hymns in the same hallway. *See, e.g.*, Nick Corasaniti and Nate Schweber, *Corruption Case Against Senator Menendez Ends in Mistrial*, N.Y. TIMES, Nov. 16, 2017 (noting that defendant Menendez "would occasionally pray,

gathering with clergy outside the courthouse and sometimes was heard singing 'Amazing Grace' in an elevator"); Nicholas Pugliese, *Menendez defense rests after judge denies motion for mistrial*, NorthJersey.com, Oct. 30, 2017 (noting that before the Court's ruling on the defendants' motion for a mistrial, defendant Menendez "was humming 'Amazing Grace' while strolling the hallways of the federal courthouse in Newark, similar to what he reportedly did during another critical juncture in the case"). The defendants and their supporters are of course permitted to congregate in the public hallways, but the jurors should not be subjected to their congregation. At the end of each day, the jurors were permitted to exit the courtroom through a private corridor, and exit the courthouse with an escort from the U.S. Marshals Service. The Government respectfully requests that the same safeguards be provided each morning.

## III.    Conclusion

The public holds a substantial interest in the fair resolution of the serious corruption charges against the defendants, and is entitled to a verdict based solely on the facts and the law. The defendants and their counsel should not be permitted to undermine the integrity of that resolution by inviting the jury to violate its oath with improper considerations of ethnicity or partisan politics. Accordingly, the Government respectfully requests that this Court prohibit the defendants from making irrelevant and improper arguments or comments at trial based on race, political affiliation, or any other extraneous claims that invite nullification. The Court should also arrange for the jury's private and secure entrance to and exit from the courthouse.

Respectfully submitted this 19th day of January, 2018.

ANNALOU TIROL
ACTING CHIEF
PUBLIC INTEGRITY SECTION

By:     s/ Peter Koski
        Peter Koski
        Deputy Chief
        J.P. Cooney
        Deputy Chief
        Monique Abrishami
        Trial Attorney
        Amanda Vaughn
        Trial Attorney
        Public Integrity Section
        1400 New York Ave. NW
        Washington, D.C. 20005
        Telephone:  (202) 514-1412
        Facsimile:  (202) 514-3003

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: January 19, 2018              <u>s/ J.P. Cooney</u>
                                     Peter Koski
                                     Deputy Chief
                                     Public Integrity Section
                                     Criminal Division
                                     U.S. Department of Justice